**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WEDECO UV TECHNOLOGIES, INC., | : | |
| Plaintiff, | : | Civil Action No.  01-924 (JAG) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CALGON CARBON CORPORATION, | : | |
| Defendant. | : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before the Court on three motions for summary judgment, pursuant to FED. R. CIV. P. 56: 1) Plaintiff Wedeco UV Technologies, Inc. ("Wedeco") moves for summary judgment on invalidity of U. S. Patent Nos. 6,129,893 (filed May 13, 1998) (the "'893 patent") and 6,565,803 (filed April 27, 1999) (the "'803 patent"); 2) Defendant Calgon Carbon Corporation ("Calgon") moves for summary judgment on infringement of these patents; and 3) Defendant Calgon moves for "summary judgment to dismiss"[1] Plaintiff's claims for unfair competition and declaratory judgment of non-infringement.  For the reasons set forth below, Plaintiff's motion will be granted; Defendant's motion for summary judgment on infringement will be denied; and Defendant's motion for summary judgment on Plaintiff's claims will be granted in part and denied in part.

---

[1] The grant or denial of summary judgment, by operation of the Rule, does not address or require dismissal of the complaint.  See Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 121 n.2 (3d Cir. 1999).

1

## BACKGROUND

Defendant Calgon holds two patents for ultraviolet ("UV") water disinfection systems, the '893 and the '803 patents. These patents claim methods of disinfecting water by irradiating it with UV light, of a certain frequency, within a specified dosage range. Plaintiff Wedeco is a manufacturer of UV water disinfection systems which use low-pressure lamps.

Prior art systems used low dosages of UV light to disinfect bacteria and viruses in drinking water. The parties agree that the conventional wisdom in the prior art held incorrectly that low dosages of UV light were ineffective for inactivating protozoans. The '803 and '893 patents are directed to the use of low dosages of UV light to inactivate two protozoans, Cryptosporidium parvum ("Crypto") and Giardia muris ("Giardia") in drinking water.

Wedeco filed its Complaint in this action in 2001, in which, inter alia, it alleged that Calgon had engaged in unfair competition by representing to others that the use of low-pressure UV technology was covered by the '893 patent. This Court held a Markman hearing on this issue and, in the Opinion of March 9, 2004, determined that low-pressure UV technology is not excluded from the scope of the '893 patent.

In its Complaint, Wedeco also sought a declaratory judgment of non-infringement of the '893 patent. In the third summary judgment motion listed above, Calgon moves for summary judgment on these claims of unfair competition and declaratory judgment of non-infringement.

## LEGAL STANDARD

### I.      Summary Judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the

moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer,

3

Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## II.   Patent Invalidity due to Anticipation

A patent may be invalidated for anticipation under 35 U.S.C. § 102, which states:

A person shall be entitled to a patent unless . . .

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

"A patent is presumed to be valid, 35 U.S.C. § 282, and this presumption can only be overcome by clear and convincing evidence to the contrary.  A claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference.  To anticipate, the reference must also enable one of skill in the art to make and use the claimed invention."

Bristol-Myers Squibb Co. v. Ben Venue Labs., 246 F.3d 1368, 1374 (Fed. Cir. 2001) (citations omitted) (hereinafter "BMS").  "Anticipation is a question of fact.  However, without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law."  SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1343 (Fed. Cir. 2005).

Anticipation may be express or inherent.  The Federal Circuit uses two tests for inherent anticipation: "A reference includes an inherent characteristic if that characteristic is the 'natural result' flowing from the reference's explicitly explicated limitations."  Eli Lilly & Co. v. Barr Labs., 251 F.3d 955, 970 (Fed. Cir. 2001).  The Federal Circuit also recognizes a "necessarily present" test: "a prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference."  SmithKline, 403 F.3d at 1343 (citing Continental Can Co. v. Monsanto Co., 948 F.2d 1264, 1268 (Fed. Cir. 1991)).  "[W]hen considering a prior art method, the anticipation doctrine examines the natural and inherent results in that method without regard to the full recognition of those benefits or characteristics within the art field at the time of the prior art disclosure."  Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1378 (Fed. Cir. 2005).


**DISCUSSION**

**I.     Plaintiff's Motion for Summary Judgment on Patent Invalidity**

      **A.     Introduction**

In a dispute over patent invalidity due to anticipation, pursuant to 35 U.S.C. § 102, the key issue is novelty: is the subject matter patentably new?  There is no dispute in this case that

use of UV to disinfect water was old and well-known in the prior art.[2]  At issue in this matter is whether use of the prior art UV disinfection process for the inactivation of Crypto and Giardia is patentably new.  As will be seen infra, Wedeco has met its burden of establishing by clear and convincing evidence that all of the claimed elements are disclosed, expressly or inherently, in the prior art.  Calgon's principal defense is to foist a burden upon Wedeco that is not supported by law: Calgon argues that, to prevail, Wedeco must prove, by clear and convincing evidence, that the prior art actually practiced the treatment process to inactivate Crypto.  This argument misapprehends the law of the Federal Circuit and fails to rebut Wedeco's case.  Disclosure, not practice, is necessary for anticipation.  SmithKline, 403 F.3d at 1344.

Calgon's main approach to countering Wedeco's case, then, relies on persuading this Court to adopt erroneously nearly insurmountable evidentiary requirements for proof of anticipation.  This fundamental error infects, as it were, Calgon's major arguments.  Calgon puts great emphasis on the assertion that the claim preambles are claim limitations.  The point of this position is to bolster the argument that, for a prior art reference to invalidate the patents, Wedeco must show by clear and convincing evidence that Crypto was present and inactivated at the time of the prior art disclosure.  It is not uncommon, however, to find that a claim element has not been stated in a prior art reference, and the doctrine of inherent anticipation may be invoked to fill the gap.  Proving inherent anticipation requires clear and convincing evidence that the

---

[2] See, e.g., U.S. ENVIRONMENTAL PROTECTION AGENCY, *Ultraviolet Light Disinfection Technology in Drinking Water Application – an Overview* (Sept. 1996) (hereinafter, "EPA Overview") ("The use of ultraviolet light to disinfect drinking water in the United States dates back to 1916."). (Garrone Dec. Ex. E 1-5.)  In 1992, the American Water Works Association estimated that more than 500 water treatment facilities in the U.S. used UV for water disinfection. (Id. at 1-18.)  The EPA Overview reviews research on the use of UV methods to inactivate Crypto and Giardia. (Id. at § 2.2.3.)

missing element was inherent in the disclosure – not that it was actually present in the past practice.

James Bolton, inventor of the patents at issue, admitted that prior art UV water treatment methods would have inactivated Crypto. The prior art, however, did not recognize that these methods were effective against Crypto. The patents represent the discovery of a previously unappreciated, inherent result of a known process: effectiveness at inactivating Crypto and Giardia. They are invalid due to anticipation under 35 U.S.C. § 102(b).

This Opinion first examines Calgon's arguments on claim construction, followed by the analysis of anticipation. Although the analysis of anticipation by itself results in a determination of invalidity, this Court will further examine the invalidity question with two related inquiries: 1) is the patented use a new use? and 2) do the patents make infringers out of preexisting users?

   B.    Are the preambles claim limitations?

The claims in the patents at issue begin with preambles. As an initial matter, the parties dispute whether the preambles are claim limitations. The invalidity question does not turn on resolution of this question; whether or not the preambles are held to be claim limitations, the prior art references anticipate.

The preambles at issue are:

1.    A method for the prevention of infection from cryptosporidium oocysts found in drinking water . . .
7.    A method for the prevention of replication of cryptosporidium oocysts or giardia cysts in drinking water treatment . . .
13.   A method of treating drinking water containing contaminants including cryptosporidium . . .

('803 patent)

1.       A method for the prevention of cryptosporidium oocysts . . .

('893 patent)

"No litmus test defines when a preamble limits claim scope." In re Cruciferous Sprout Litig., 301 F.3d 1343, 1347 (Fed. Cir. 2002). The Federal Circuit recently restated the principles that guide the inquiry into whether a preamble is a claim limitation. Bicon, Inc. v. Straumann Co., 441 F.3d 945, 952 (Fed. Cir. 2006). "Preamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim." Id.

All of the cited preambles merely state the intended use of the invention. They are not claim limitations.[3] As Wedeco argues, the disinfection process is carried out in the same way whether or not the user intends to prevent Crypto oocysts. Calgon has not shown that the preambles are more than statements of intended use.

"If the body of the claim sets out the complete invention, the preamble is not ordinarily treated as limiting the scope of the claim. However, the preamble is regarded as limiting if it recites essential structure that is important to the invention or necessary to give meaning to the claim." Id. In a process patent, such essential structure might be additional steps of the process. Catalina Mktg. Int'l v. Coolsavings, 289 F.3d 801, 808 (Fed. Cir. 2002). In both patents at issue, the body of the claim sets out the complete invention. The preamble does not recite structure that is important to the invention. As will be discussed below, the preambles neither specify nor affect process steps. The subject matter is the same, and the process is the same, with them or

_____

[3] This was demonstrated at oral argument. When arguing that the preambles give life, meaning, and vitality to the claims, Calgon explained how the preambles state the object of the invention. (Hr'g Tr. 6, Apr. 26, 2006.) The object of the invention is the same as its intended use.

without them.

Calgon makes four arguments in support of its contention that the preambles are claim limitations:

        *1.    The preambles provide the "raison d'etre" for the claims.*

Calgon cites Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp., 320 F.3d 1339, 1345 (Fed. Cir. 2003), and Griffin v. Bertina, 285 F.3d 1029 (Fed. Cir. 2002), for the proposition that a preamble is limiting when it provides the "raison d'etre" for the claim.  The problem with this argument lies in the test that the Federal Circuit uses to apply the principle: the court looks to see whether, without the preamble language, the claims manifest an "absence of fathomable utility."  Boehringer, 320 F.3d at 1345.  Thus, applying this test in the instant case, a preamble might be a limitation if, without it, the process stated manifests an absence of fathomable utility.  This is not the case: even if not used to treat water for Crypto and Giardia, the claimed process is very useful for disinfecting water.[4]  The preambles do not provide the raison d'etre for the claims.

        *2.    The preambles provide an antecedent basis for the claims.*

Calgon argues that the following principle applies: "When limitations in the body of the

---

[4] It is instructive to consider the Federal Circuit's approach to "raison de'etre" in the recent case of On Demand Mach. Corp. v. Ingram Indus., 442 F.3d 1331 (Fed. Cir. 2006).  In On Demand, the court held that the preamble, "a method of high speed manufacture of a single copy of a book . . .," limited the claim in that it stated a "necessary and defining aspect of the invention."  Id. at 1336, 1343.  The court held that "high speed manufacture of a single copy is fundamental to the [] invention."  Id. at 1343.  In the instant case, the prevention of Crypto oocysts is neither necessary, defining, nor fundamental to the water treatment process.  Rather, the claimed process is old and has been used to prevent infection from numerous other organisms.  The inactivation of Crypto could not be defining of a method that has long been used to inactivate other organisms.

claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention." <u>NTP, Inc. v. Research in Motion, Ltd.</u>, 418 F.3d 1282, 1306 (Fed. Cir. 2005).  Calgon points to several claims in which the preamble mentions treatment of water, and the body of the claim has the phrase "said water" in it.  Calgon argues that, in these claims, the preamble provides the antecedent basis upon which the body of the claim relies.  Again, the problem with this argument lies in the test the Federal Circuit uses to apply the concept: to provide an "antecedent basis," the preamble must be "necessary to provide context" for the terms in the claims.  <u>Id.</u>  The word "water" in the body of the claims is easily understood without the preamble.  Because the preamble does not provide any context necessary for understanding "water," the preambles in question do not meet the "antecedent basis" test for serving as a claim limitation.

<u>Rapoport v. Dement</u>, 254 F.3d 1053, 1059 (Fed. Cir. 2001), provides a helpful contrast. In <u>Rapoport</u>, the Federal Circuit held that the preamble phrase, "treatment of sleep apneas" provided a needed antecedent basis for the phrase, "to a patient in need of such treatment" in the body of the claim.  <u>Id.</u>  Without the preamble language, the reader would not be able to understand what treatment the patient was in need of.  In contrast, in the instant matter, in claim 7 of the '803 patent, the reader can understand "irradiating said water" without "a method for prevention . . . in drinking water."  The word "drinking" in the preamble states the purpose of the treatment process, and does not tell the reader anything necessary for understanding the water referred to in the body of the claim.

        *3.*     *The specifications demonstrate that the preambles are limitations.*

Calgon argues that the specifications demonstrate that the preambles are essential

limitations, but this seems only to rehash the "intended use" discussion.  There can be no dispute that the specifications, and the patents as a whole, reflect the applicant's intention that the claimed water treatment methods be used for the inactivation of Crypto, and no dispute that the preambles are in accord and reflect this intended use.  This makes no new contribution to the inquiry into whether the preambles are claim limitations.

        4.     *The prosecution history shows that the preambles are claim limitations.*

Calgon argues that clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art is an indication that the preamble is a limitation.  This is correct as a statement of law but does not get Calgon very far, since, at its weightiest, this is no more than an indication.  Calgon contends that: 1) the applicant deleted the words "and similar organisms" from the preamble during prosecution because the examiner thought they were vague; and 2) the applicant used the preamble to distinguish the prior art.  While the first point is irrelevant because it does not entail using the preamble to distinguish the prior art, the second argument must be addressed.

In its brief, Calgon provides only one paragraph on the use of the preamble to distinguish the prior art.  (Def.'s Opp. Br. 16-17.)  This paragraph contains no analysis of the prosecution history, but merely the claim that this argument is correct, supported only by references to the Counterstatement of Material Facts.  The referenced sections of the Counterstatement contain no references to the preambles, nor does any quoted section of the prosecution history expressly discuss the preambles.  Calgon has provided minimal support for its prosecution history argument.  Even if this Court looks beyond Calgon's superficial treatment of this argument in its brief, and examines the substance of the prosecution history, this Court does not find that the

11

prosecution history supports Calgon's argument.

In its brief, Calgon refers to the prosecution history by citing to its Counterstatement of Material Facts, which has the specific references to the file.  Calgon points to two sections of the Counterstatement, one for each patent.

As to the '893 patent, Calgon points only to ¶¶ 34 and 35 in the Counterstatement.  These paragraphs point to the applicant's Request for Reconsideration of March 31, 2000.  In the cited portions of this filing, the applicant did not use the preamble to distinguish the prior art.  Rather, the applicant used the limitations in the body of the claim (use of continuous wave UV, the dosage range) to distinguish the Dunn reference.  Calgon has not supported its claim that the applicant relied on the preamble to distinguish the prior art in the prosecution history of the '893 patent.

As to the '803 patent, the second part of the Counterstatement that Calgon points to, ¶¶ 61-71, addresses a sequence of rejections by the PTO and responses from the applicant.  In a nutshell, the examiner rejected some claims as anticipated and obvious in view of the prior art. The examiner cited prior art references disclosing the use of ultraviolet light to inactivate Crypto in water.  The applicant's arguments consistently distinguish the prior art on the basis of the characteristics of the ultraviolet light used: the wavelength, the dosage, and whether the light was continuous or pulsed.  As expressed in the conclusion of the Amendment of November 14, 2001, the applicant distinguished the prior art with the argument that "UV light in other than pulsed form or in other than high doses was not known to those skilled in the art as a method for preventing infection by these types of organisms when found in water."  (Bretscher Cert. Ex. 21 at 10.)   The conclusion of the Amendment of July 10, 2002 states the same idea.  (Bretscher

Cert. Ex. 23 at 7.)  These Amendments do not support Calgon's assertion that the applicant used the preamble to distinguish the prior art.  Rather, the applicant distinguishes the prior art on the basis of UV characteristics stated in the body of the claim.

Calgon does not explain how the cited Amendments show use of the preamble to distinguish the prior art.  It is instructive to compare one case that it cites, <u>Cruciferous Sprout</u>, 301 F.3d at 1347, which does not support Calgon's position.  The preamble at issue in that case read: "A method of preparing a food product rich in glucosinolates, comprising . . ." <u>Id.</u> at 1345. During reexamination, the patentee argued that "the cited prior art does not anticipate the claims because it does not explicitly teach a method of preparing a food product comprising cruciferous sprouts that are rich in glucosinolates. . ." <u>Id.</u> at 1348.  The court held that this showed a "clear reliance [] on the preamble to persuade the Patent Office that the claimed invention is not anticipated by the prior art." <u>Id.</u>

In the instant case, the facts are opposite.  The applicant did not argue, nor reasonably could he have, that the prior art did not explicitly teach what is stated in the preamble – a method for the prevention of infection from cryptosporidium oocysts found in drinking water.  Whereas in <u>Cruciferous</u>, the applicant showed that the prior art did not disclose the matter in the preamble, here the prior art – such as Ransome – does explicitly teach the subject matter of the preamble. In the context of <u>Cruciferous</u>, one cannot conclude that the applicant for the '803 patent relied on the preamble to distinguish the prior art.

Calgon cites another case that works against its position, <u>Invitrogen Corp. v. Biocrest Mfg., L.P.</u>, 327 F.3d 1364, 1370 (Fed. Cir. 2003).  In that case, the applicant amended the preamble to distinguish the prior art, thus clearly relying on the preamble to distinguish the prior

art.  The deletion of "and similar organisms" from the preamble during prosecution of the '893 patent was done because of vagueness, not to distinguish the prior art.  Calgon has pointed to no amendments to any preamble made to distinguish the prior art.

Another case which examined the role of the claim preamble in the prosecution history of a process patent is BMS, 246 F.3d at 1375.  In BMS, the Federal Circuit held that a preamble did not distinguish the prior art because it merely expressed a purpose of the process, and did not state a new use.  Id.  Thus, following BMS, a preamble distinguishes the prior art if it states a new use.  In the instant matter, the new use inquiry will discussed in detail infra, but the purpose stated in the preambles is not new, but is expressly stated in the prior art.  As in BMS, the preambles here state an old use and thus do not distinguish the prior art.  Id. at 1377.

Examination of the prosecution history as well as Calgon's cited cases thus supports the position contrary to Calgon's: the applicant did not rely on the preamble during the prosecution of the patents to distinguish the prior art.  Yet, even if the Court were to agree entirely with Calgon that the applicant relied on the preamble during the prosecution history to distinguish the prior art – which it does not – this would still be insufficient to outweigh the other evidence that the preambles are not claim limitations.

This Court determines that the preambles are not claim limitations.  This determination does not affect the outcome of the anticipation analysis; the characteristics stated in the preambles appear expressly or inherently in the prior art references.

B.    Anticipation analysis of the prior art references

Wedeco cites four pieces of prior art: 1) the public use at Fort Benton, Montana;  2) Ransome (1993); 3) the EPA Overview (1996); and 4) Rice and Hoff (1981).  This Court finds

that Fort Benton and Ransome anticipate all claims of both patents, and neither the EPA

Overview nor Rice and Hoff need to be analyzed.  Every limitation of the patented methods

appears in the first two pieces of prior art.

As discussed above, even if the preambles are considered to be claim limitations, the use

of the method for the inactivation of Crypto is found expressly or inherently in the prior art.

While Ransome expressly discloses the use of UV treatment for inactivation of Crypto in water,

the inactivation of Crypto is inherent in the use at Fort Benton.  To establish the factual

foundation for this conclusion, Wedeco offers the testimony of two of Calgon's experts, Drs.

Bolton and Huffman.

Dr. James Bolton is the inventor of the two patents at issue.  At his deposition on

February 15, 2002, Bolton testified as follows:

> Q:    If UV was disinfecting bacteria back when this patent was issued, it was
>       also at that time disinfecting cryptosporidium, wasn't it?
>
> [Much debate ensues over whether the witness must answer a hypothetical
> question.  Finally, he answers:]
>
> A:    If cryptosporidium was in the water – this is very hypothetical – it would
>       have been disinfected.

(Garrone Dec. Ex. D 138:16-19, 140:5-7.)

Dr. Debra Huffman testified as Calgon's expert in a dispute in a Canadian court regarding

a Canadian patent with claim language that is identical to that of the '893 patent.  Dr. Huffman

stated that, if the words "for the prevention of Cryptosporidium oocysts" were removed, the

process claimed in this patent was old and well-known as of May 13, 1998, and that such prior

art systems would have prevented Crypto oocysts from replicating.  Calgon Carbon v. North Bay,

[2005] FC 838.  The Canadian court cited this testimony in the published opinion.  Id.

15

Both Bolton and Huffman have given sworn testimony that the prior art systems would have inactivated Crypto.[5]  Their statements are clear and convincing evidence that inactivation of Crypto is a natural result of the operation of the UV disinfection methods stated in the bodies of the claims and is thus inherent in them.  Bolton's statement is unequivocal: every prior UV water treatment process that inactivated bacteria necessarily disinfected Crypto.  The result, disinfecting Crypto, was necessarily present in such prior art.  Huffman's statement is unequivocal as well: inactivation of Crypto would have necessarily resulted from the use of the UV treatment processes stated in the bodies of the claims in the '893 patent.  Either expert's testimony alone would be sufficient to establish that inactivation of Crypto is inherent in the prior art UV treatment of water; together, they certainly meet the standard of clear and convincing evidence.

1.    *Calgon misapprehends the Federal Circuit law of anticipation*

In arguing this motion, Calgon's principal strategy is to argue that, to prevail, Wedeco must prove, by clear and convincing evidence, that the prior art actually practiced every element of the claimed treatment process to inactivate Crypto.  This crucially misstates the law of anticipation and essentially writes the doctrine of inherent anticipation out of Federal Circuit law.

Anticipation requires that every characteristic of the claim in question be found in the prior art <u>reference</u>, not in any or every instance of <u>practice</u>.  The Federal Circuit emphasized this point in <u>SmithKline</u>, 403 F.3d at 1344 (holding that anticipation requires only disclosure, not reduction to actual practice).  This holding is fatal to Calgon's position.  Calgon's main argument

---

[5]At his deposition, Samuel Stevens also testified that prior art UV water treatment systems would have inactivated Crypto at a dose of 40 mJ/cm$^2$.  (Garrone Dec. Ex. C 82: 5-14.)

is that Wedeco has not produced clear and convincing evidence of actual practice.  Because the Federal Circuit does not require reduction to actual practice to anticipate, Wedeco cannot be faulted on this basis.

It is instructive to compare this case with SmithKline: the Federal Circuit held there that the district court erred by using an actual practice standard for inherent anticipation that is similar to what Calgon proposes.  SmithKline involved a patentee (SmithKline) and an accused infringer (Apotex).  In SmithKline, the district court had held that Apotex had failed to prove inherent anticipation because it had not shown, by clear and convincing evidence, that it was impossible to practice the prior art without infringing before the critical date.  Id. at 1343.  The Federal Circuit held that the district court had erred and had held the accused infringer to "too exacting" a standard.  Id.  Moreover, the district court had erred by looking to the facts of actual practice, rather than the teachings of the prior art disclosure: "Contrary to this court's precedents, the district court's analysis of inherent anticipation did not consider the teachings of the [prior art] separately from the actual production of PHC hemihydrate."  Id. at 1344.  The court stated that what was actually done, or possible to do, in the prior art was "irrelevant."  Id.  Instead, the inherent anticipation analysis requires that this Court separate disclosure from actual practice and look only to whether the prior art reference discloses a method that "naturally results" in the patented method.  Id.

In the instant case, there is no dispute that the prior art discloses a method that, when Crypto is present, naturally results in the patented method.  Wedeco has met its burden of proof of anticipation under SmithKline.

Calgon never offers a basis in law for its claim that Wedeco must prove, by clear and

convincing evidence, that every claim limitation was actually practiced in the prior art, taking it as given in its brief without citation to any authority.  (Def.'s Opp. Br. 21.)  Calgon does cite authority for the correct proposition that inherent claim characteristics must be necessarily present in the "prior art," but this means the prior art reference, not the prior art practice. Ignoring this crucial distinction is fatal to Calgon's argument.

To support its position, Calgon cites to Rapoport, 254 F.3d at 1057, which does not help. Contrary to Calgon's implication, Rapoport does not support the proposition that the inherent characteristic must be found in an actual use; rather, the court clearly stated in its conclusion that the prior art publication "did not disclose" the new use.  Id. at 1063.  Similarly unsupportive is Calgon's citation of Rosco, Inc. v. Mirror Lite Co., 304 F.3d 1373, 1380 (Fed. Cir. 2002), which clearly states that the characteristic must be in the description in the reference: "Under the doctrine of inherency, if an element is not expressly disclosed in a prior art reference, the reference will still be deemed to anticipate a subsequent claim if the missing element 'is necessarily present in the thing described in the reference. . .'"

Calgon relies on this faulty legal premise to argue that genuine issues as to material facts prevent summary judgment.  But, having based their analysis on an incorrect reading of the law of anticipation, they have failed to show that any such genuine issues preclude summary judgment.  Calgon attempts to persuade the Court that there are factual disputes as to every "piece of prior art."  (Def.'s Opp. Br. 23.)  All Calgon has shown is that there are factual questions on the irrelevant issue of what was actually practiced in the prior art – not on the relevant question of what was disclosed.

At oral argument, Calgon cited Juicy Whip v. Orange Bang, 292 F.3d 728, 737 (Fed. Cir.

2002) as authority for the proposition that anticipation based on prior public use requires actual practice of every element. (Hr'g Tr. 83-84, Apr. 26, 2006.) This is incorrect. Juicy Whip does not address the application of inherent anticipation to prior public use. Moreover, Juicy Whip relies on Scaltech which, as discussed below, applies the doctrine of inherent anticipation to the "on sale" bar and allows the doctrine to fill the gaps when elements are missing.

2.     <em>Anticipation by the public use at Fort Benton, Montana</em>

As evidence of the public use at Fort Benton, Wedeco offers the declaration of Timothy Farwick, Superintendant of the Fort Benton Water Treatment Plant since 1987 (Farwick Decl. ¶ 2.) A UV water treatment system was installed at the plant in 1987, and it has operated since May of 1987. (Id. at ¶ 3, 4.) The system uses medium-pressure UV lamps which irradiate the water with continuous light in the wavelength range of approximately 205 to 290 nm, at a dosage in the range of 20 mJ/cm$^2$ to 180 mJ/cm$^2$. (Id. at ¶ 9, 10.) Farwick's declaration is corroborated by the EPA Overview, which cited the Fort Benton Water Treatment Plant as a case study. (Garrone Dec. Ex. E § 4.3.2.)

As to the '893 patent, this discloses every limitation of every element of every claim. As to the '803 patent, this discloses every limitation of every element of claims 1-2, 4, 6-8, 10, and 12-14. The claims not anticipated are those that specify use of a low-pressure lamp or substantially monochromatic light at 254 nm. There are no disputes of fact that preclude a determination that the public use at Fort Benton anticipates every limitation in the group of claims listed above. Claims 3, 5, 9, and 11 of the '803 patent are not anticipated by the public use at Fort Benton.

While most anticipation cases involve prior art that is described in a printed publication,

19

35 U.S.C. § 102(b) allows anticipation based on public use as well.  Calgon has not argued that the law of inherent anticipation based on public use differs from that based on printed publication.  Moreover, in a case based on use under the 35 U.S.C. § 102(b) "on sale" clause, the Federal Circuit stated:

> If the process that was offered for sale inherently possessed each of the claim limitations, then the process was on sale, whether or not the seller recognized that his process possessed the claimed characteristics.
>
> Inherency may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient to establish inherency.  However, if the natural result flowing from the operation of the process offered for sale would necessarily result in achievement of each of the claim limitations, then [the] claimed invention was offered for sale.

Scaltech Inc. v. Retec/Tetra, 178 F.3d 1378, 1384 (Fed. Cir. 1999) (citations omitted).  Thus, the court applied the familiar "natural result" test for inherent anticipation to the proposed use: would the natural result of operating the process achieve the claim limitations?  Thus, to show anticipation by public use, Wedeco must show that the use would naturally result in each of the claim limitations, not that every claim limitation was actually practiced.

Calgon misinterprets the law, then, when it argues that Calgon must show that Crypto was necessarily present in the actual water of Fort Benton in the 1990's – an oppressive burden indeed.  As with prior art publications, Wedeco is not required to prove that Crypto or Giardia were actually in the water during the public use at Fort Benton and were inactivated.  Under the doctrine of inherent anticipation, even if the preambles are claim limitations, Wedeco need only prove that inactivation of Crypto or Giardia would naturally result from the use at Fort Benton, not that it did.  Since, at his deposition,  Bolton admitted that, if a UV process inactivated bacteria, it inactivated Crypto, Wedeco has met this burden.

       *3.*    *Anticipation by Ransome*

In 1993, Ransome, et al. published a scientific paper, "Effect of disinfectants on the viability of Cryptosporidium parvum oocysts" (hereinafter, "Ransome").  (Garrone Dec. Ex. L.)  This paper discloses all of the limitations in claims 3, 5, 9, and 11 in the '803 patent.  Ransome clearly discloses use of UV light from a low-pressure lamp in a dosage range of 42 - 120 mJ/cm$^2$.  (Ransome at 104, 110.)  Ransome does not discuss the continuous limitation, nor is there any discussion of the wavelength(s) and whether the light was "broad band."  During prosecution of the '803 patent, however, the applicant admitted that Ransome disclosed use of continuous UV.  (Bretscher Cert. Ex. 23 at 3.)  At oral argument, the parties agreed that low-pressure lamps emit light at a wavelength that is substantially 254 nm.  (Hr'g Tr. 84-85, Apr. 26, 2006.)  Also, low-pressure lamps must meet the limitation of having predominant wavelength bands falling within the range of 200 to 300 nm, since claim 5 of the '803 patent specifies that the UV light of claim 1 (which specifies the 200-300 nm range) is produced by a low-pressure lamp.  '803 Patent col.12 ll.19-20.  Unlike Fort Benton, Ransome expressly discloses use of UV light to inactivate Crypto.  Again, even if the preambles are claim limitations, this reference expressly discloses all of the limitations in claims 3, 5, 9, and 11 of the '803 patent.

Calgon attacks the conclusion of anticipation by Ransome with three arguments: 1) Ransome does not disclose the "drinking water" limitation; 2) arguments based on what Ransome actually practiced, rather than what the reference discloses, which, as already established, misapprehend the law of anticipation and need no further discussion; and 3) Ransome is not enabling.  This Court shall reject each of these arguments.

          i.        Ransome does not disclose the "drinking water" limitation.

Calgon argues that Ransome does not disclose the "drinking water" claim limitation from the '803 patent.[6]  This argument is highly problematic and fails for multiple reasons, but the simplest is that Ransome <u>does</u> disclose the use of his method for use with drinking water, and on the first page, at that.  The second English paragraph in the article refers to "potable water," problems with taste and "odour" in water treatment, and "drinking water treatment."  (Ransome at 103.)  Furthermore, at oral argument, Calgon proposed that "drinking water" should be defined as "potable water."  (Hr'g Tr. 32, 59, Apr. 26, 2006.)  As noted, Ransome uses that exact phrase. (Ransome at 103.)  Furthermore, the Ransome reference is clearly directed to teaching readers about treating drinking water for Crypto.  Thus, even if this Court were to find that "drinking water" is a claim limitation – which it does not – that limitation is present in Ransome.

          ii.        Ransome is not enabling.

Calgon argues that Ransome is not enabling and therefore cannot anticipate.  "To serve as an anticipating reference, the reference must enable that which it is asserted to anticipate."  <u>Elan Pharms., Inc. v. Mayo Found.</u>, 346 F.3d 1051, 1054 (Fed. Cir. 2003).

Wedeco contends that Calgon's expert has made statements that are essentially admissions that Ransome is enabling.  Wedeco points to the deposition of Dr. Chauret, in which he admitted that one skilled in the art would know how to carry out instructions to expose a sample of water to various doses of 25 - 50 mJ of UV.  (Garrone Reply Dec. Ex. A 190-192.)  Dr. Chauret agreed that one skilled in the art would know how to do this.  Dr. Chauret did not

---

[6] Calgon also asserts in its brief that the claims of the '893 patent specify drinking water, but this is incorrect.

state that any experimentation would be necessary.  Ransome can be considered to constitute

such instructions, which, according to Dr. Chauret, one of ordinary skill in the art would know

how to follow.  This supports the conclusion that Ransome is enabling.

The Federal Circuit has not decided how to place the burden of persuasion in an

enablement challenge to an anticipating prior art reference, but it has suggested that a

presumption of enablement "might" apply to prior art publications.  Amgen Inc. v. Hoechst

Marion Roussel, 314 F.3d 1313, 1355 (Fed. Cir. 2003).

The facts and circumstances of this case make such a presumption appropriate.  Here,

Ransome was cited and discussed by both applicant and examiner during prosecution.[7]  Certainly

the applicant should be presumed to be of ordinary skill in the art, and both applicant and

examiner found Ransome enabling enough to dispute whether the reference anticipated.  As such,

it is reasonable to presume that it was enabling as to the anticipatory disclosures.  Moreover, as

Wedeco suggests, Calgon's failure to argue that Ransome was not enabling during prosecution

weighs in favor of presuming it enabling.

Applying the presumption of enablement, Calgon bears the burden of bringing forth

admissible evidence to show the existence of a genuine issue as to any material fact.  It has not

produced any evidence that Ransome is not enabling.  Moreover, Calgon presented numerous

critiques of Ransome by its expert, Dr. Chauret, yet Dr. Chauret did not assert that one of

ordinary skill in the art could not carry out Ransome's teachings without undue experimentation.

_____

[7] As noted by Wedeco, the applicant, in the Amendment of July 10, 2002, states that "Ransome et al. . . teach a continuous irradiation radiation dose of $25mWs/cm^{-2}$."  (Garrone Dec. Ex. X 3.)  The admission that Ransome teaches this is inconsistent with the argument that Ransome is not enabling.  If Ransome was not enabling, the applicant would surely have argued that to the examiner to overcome the reference.

See Elan, 346 F.3d at 1054 ("Enablement requires that the prior art reference must teach one of ordinary skill in the art to make or carry out the claimed invention without undue experimentation").  In his declaration, Dr. Chauret faulted Ransome because the reference does not give sufficient detail to replicate the experiments.  (Chauret Dec. of October 6, 2005 ¶ 74.) What Dr. Chauret does not say is that one of ordinary skill would be unable to use Ransome's teachings to inactivate Crypto.  Given that this was filed on the same date as Calgon's opposition brief on invalidity, the absence of the assertion that one of ordinary skill in the art could not use Ransome's teachings to inactivate Crypto without undue experimentation, from an otherwise critical expert, is conspicuous.

Furthermore, this Court may look to other references, which need not be contemporaneous with Ransome, to ascertain whether Ransome is enabling.  BMS, 246 F.3d at 1379.  Viewed as a whole, Wedeco's prior art references strongly support the conclusion that Ransome would have been enabling to one of ordinary skill in the art more than one year prior to the filing date of the '803 patent.

Even if this Court were not to apply a presumption of enablement, and were to find that Wedeco has the burden of proving that Ransome is enabling, Wedeco has met its burden.  To defeat summary judgment, Calgon, as the non-movant, must submit evidence that creates a genuine issue as to the factual issue of enablement.  Calgon has not done so.  Rather, in its opposition brief, Calgon does no more than argue that Ransome omits specific details that would be needed to duplicate his experimental procedures.  (Def.'s Opp. Br. 32-33.)  This is not the correct enablement standard: to enable, Ransome must teach one of ordinary skill how to practice the invention, not exactly replicate the prior art.  Calgon may not rely on conclusory allegations

of non-enablement to defeat summary judgment.

This Court concludes that Ransome is enabling.  Ransome discloses all the limitations in claims 3, 5, 9, and 11 of the '803 patent and anticipates them under 35 U.S.C. § 102(b).

     C.     <u>Are the patented methods a new use of an old process?</u>

Calgon does not claim that the patents reflect the discovery of a new process.  Rather, Calgon contends that the applicant discovered a patentably new use.  "[A]ny new and useful process" is patentable under 35 U.S.C. § 101.  "The term 'process' means process, art or method, and includes a new use of a known process . . ."  35 U.S.C. § 100(b).

Although Calgon contends that the patented methods are patentably new uses of a known process, Calgon has not backed this claim up with analysis, law, or facts.  At oral argument, Calgon pointed to no evidence or case law in support of its claim of new use.  This Court asked Calgon to supply an analysis under Federal Circuit law by which this Court could conclude that the use is new; Calgon merely repeated the conclusory allegation that the use is new.  (Hr'g Tr. 108-112, 119-120, Apr. 26, 2006.)  This is not persuasive.  Examination of relevant Federal Circuit cases, combined with the evidence provided by Wedeco, shows that the inactivation of Crypto is not a patentably new use, but a newly discovered result of an old process.

In <u>BMS</u>, 246 F.3d at 1376, the Federal Circuit stated succinctly a basic principle of inherent anticipation in method or process patents: "Newly discovered results of known processes directed to the same purpose are not patentable because such results are inherent."  <u>See also</u> <u>Perricone</u>, 432 F.3d at 1377.  The present case falls squarely within this principle.  The UV treatment of water is a known process.  The inactivation of Crypto and Giardia are newly discovered results of the known process: the old UV water disinfection method inactivates

25

Crypto and Giardia along with bacteria and viruses.[8]  As such, under <u>BMS</u>, the newly discovered results are unpatentable because they are inherently anticipated.

The <u>BMS</u> court construed a claim's preamble, "[a] method for treating a cancer patient  to effect regression of a taxol-sensitive tumor, said method being associated with reduced hematologic toxicity."  <u>Id.</u> at 1375-6.  The court saw this as "a statement of purpose and intended result" and, comparing the actual steps of the method in the patent with the method in the prior art reference, held that it "does not result in a manipulative difference in the steps of the claim." <u>Id.</u> at 1376.   Thus, in comparing the process of the invention with that in the prior art, the <u>BMS</u> court looked for an identity of physical steps.  Applying this approach to the present case, the new method and the old method have an identity of physical steps.  As in <u>BMS</u>, the fact that the '803 and '893 processes are associated with a new intended result does not render them patentably new.

Examination of other key Federal Circuit "new use" cases supports the conclusion that Calgon's uses are not patentably new:

---

[8] For support, <u>see</u>, <u>e.g.</u>, the expert reports of Drs. Moreland and Fricker.  (Moreland Dec., Fricker Dec.)  Wedeco argues that the advance that brought about the recognition that the old UV water treatment method could be used to inactivate Crypto was an advance in the assay method. The old assay method supported the incorrect conclusion that the prior art process did not inactivate Crypto.  Improvements in the assay method allowed scientists to recognize that the prior art treatment process did, in fact, inactivate Crypto.  (Hr'g Tr. 20, 25, 56, Apr. 26, 2006.) Thus, what was newly discovered was a result of the process.  The report of Dr. Moreland supports this view.  (Moreland Dec. ¶ 8.)

Calgon admits this.  At his deposition, Samuel Stevens was asked about the research Calgon had done.  Stevens stated: "in working with [Dr. Clancy], we realized that the probable genesis of the problem was, was the assay method used in the past was not the right one." (Garrone Dec. Ex. C 67:1-4.)  Calgon's Counterstatement agrees that Calgon's research team "found that the conventional wisdom had been wrong, and that *Cryptosporidium* and *Giardia* in drinking water could be rendered non-infectious by low (*e.g.*, 1-175 mJ/cm$^2$), continuous (not pulsed) doses of UV light."  (Counterstatement ¶ 15; <u>see also</u> Hr'g Tr. 110, Apr. 26, 2006.)

- <u>Perricone</u>, 432 F.3d at 1377.  In <u>Perricone</u>, the prior art disclosed use of a skin cream to treat damaged and aged skin.  The Federal Circuit held that use of the skin cream to treat skin sunburn was patentably new.  <u>Id.</u> at 1379.  Crucial to the court's reasoning here was that "skin sunburn" was construed as part of a method step ("applying to the skin sunburn"), and this method step was neither disclosed in the prior art nor inherent in it. <u>Id.</u>  Although the court did not cite the "manipulative difference" test of <u>BMS</u>, the <u>Perricone</u> majority essentially found a manipulative difference in the steps of the claim. Thus, it was not the same method with a new use, but a new method.  Moreover, the majority observed that the prior art reference was "silent" on the entire subject of sunburn.  <u>Id.</u>  In contrast, in the instant matter, the Ransome and EPA Overview are not silent on the subject of inactivation of Crypto.  Crucially, unlike <u>Perricone</u>, every method step here is disclosed in the prior art.

- <u>Catalina Mktg.</u>, 289 F.3d at 809-810.  <u>Catalina Mktg.</u> offers a hypothetical involving shoe polish to explore the analysis of new use of a composition.  Inventor A invents a shoe polish for polishing shoes and gets a composition patent.  Inventor B could not get a patent on the use of the polish to repel water on shoes, because this is inherent in A's use. Inventor B could get a patent on the use of the polish to grow hair.  Uses which are inherent in the prior art are not patentably new.  Under this analysis, a new use is just that – new.  The desired result did not result from the old use: use of the shoe polish to repel water on shoes did not grow hair.  Applying this analysis to the instant case, because inactivation of Crypto did result from the old use, it is not a new use.

- <u>Rapoport</u>, 254 F.3d at 1063.  <u>Rapoport</u> concerned the question of whether the use of the

drug buspirone to treat sleep apnea was a new use, where the old use of buspirone was to treat anxiety.  The case involved review of a decision by the Board of Patent Appeals and Interferences, and was reviewed under the substantial evidence standard.  The Federal Circuit held that the Board's determination, that the prior art reference did not teach the treatment of sleep apnea, was supported by substantial evidence.  The court thus affirmed the finding of no anticipation.  Because the prior art reference did not teach the patented use, the inventor's use was patentably new. In contrast, in the instant case, the Ransome prior art reference expressly teaches the use of UV treatment of water to inactivate Crypto.  The Bolton patents cover an old use expressly taught by the prior art.

D.     Ensnaring pre-existing users

Wedeco argues that Calgon's patents make infringers out of pre-existing users of UV water treatment systems, such as Fort Benton.  There is merit to this position.  It is a maxim of patent law that "[t]hat which would literally infringe on a patent if later in time, anticipates if earlier."  SmithKline, 403 F.3d at 1341.  At oral argument, Calgon admitted that, if Crypto were found in Fort Benton's source water, such that the Fort Benton Water Treatment system was irradiating Crypto with UV light, Fort Benton would be an infringer.  (Hr'g Tr. 123, Apr. 26, 2006.)

This admission raises troubling questions about Calgon's position.  Calgon has admitted that the only difference between the prior art Fort Benton public use and the patented method is the presence of Crypto.  Crypto is a naturally occurring microorganism.  (Fricker Dec. ¶¶ 10-23.)  Calgon admits that a change in water quality – a naturally occurring phenomenon – could make a pre-existing user into an infringer.  (Hr'g Tr. 123, Apr. 26, 2006.)  Calgon's position implies that

28

users of old technology may become infringers, despite doing nothing new or different, solely because of natural events outside of their control.  The position that an accident of nature turns innocent users into patent infringers is neither equitable nor reasonable.  Moreover, applying this maxim, if Fort Benton has not changed its method, and infringes later, it anticipated earlier.

A corollary issue involves the free practice of the prior art:

> [I]f granting patent protection on the disputed claim would allow the patentee to exclude the public from practicing the prior art, then that claim is anticipated, regardless of whether it also covers subject matter not in the prior art. . . . The public remains free to make, use, or sell prior art compositions or processes, regardless of whether or not they understand their complete makeup or the underlying scientific principles which allow them to operate. The doctrine of anticipation by inherency, among other doctrines, enforces that basic principle.

Atlas Powder Co. v. IRECO Inc., 190 F.3d 1342, 1346-1348 (Fed. Cir. 1999).  Application of this principle requires a finding of anticipation.  If Calgon's patent makes Fort Benton an infringer, then Calgon's patent protection allows it to exclude the public from practicing the prior art.  Even if the patents at issue contain subject matter not in the prior art – as the patents refer to the inactivation of Crypto which the Fort Benton process makes no reference to – the fact that Calgon contends that the patents could allow them to prevent a pre-existing user, the city of Fort Benton, from practicing the prior art requires a finding of anticipation.

In the end, all of these methods of analysis lead to the same conclusion: the methods in the '803 and '893 patents are not new.  If a natural change in the water source can change a user of the prior art into an infringer, the covered methods cannot be patentably new.

E.      Summary

Wedeco has proven, by clear and convincing evidence, that every claim of the '803 and '893 patents is anticipated and invalid, pursuant to 35 U.S.C. § 102(b).  The prior public use at

29

Fort Benton discloses every limitation of every claim in the '893 patent, as well as every limitation of claims 1-2, 4, 6-8, 10, and 12-14 in the '803 patent.  The Ransome reference discloses every limitation of claims 3, 5, 9, and 11 in the '803 patent.  In applying for these patents, the applicant sought to patent what was at best a newly discovered result (inactivation of Crypto) of a known process (the UV water disinfection method).  Following <u>BMS</u>, such a result is not patentably new.

Wedeco has demonstrated that no genuine issue of material fact precludes summary judgment, and it is entitled to judgment as a matter of law.  Calgon has not presented actual evidence that creates a genuine issue as to any material fact for trial: there is no factual dispute over whether every limitation of every claim is present, expressly or inherently, in the prior art references.  Rather, the parties have disputed only a fundamental question of the Federal Circuit law of anticipation.  Calgon has done no more than to use an incorrect statement of patent law – anticipation requires actual prior art practice, rather than disclosure – to argue the insufficiency of Wedeco's evidence.  Plaintiff's motion for summary judgment on patent invalidity will be granted.

## II.    Defendant's Motion for Summary Judgment on Infringement

This Court's determination that the '803 and '893 patents are invalid due to anticipation renders the issue of infringement moot, as there can be no infringement where there is no valid patent.  Defendant's motion for summary judgment on infringement will be denied as moot.

## III.    Defendant's Motion for Summary Judgment on Plaintiff's Two Claims

This Court's determination that the '803 and '893 patents are invalid due to anticipation precludes any finding of infringement.  At the same time, it renders moot Plaintiff's request for a

declaratory judgment of non-infringement, since there are no valid patents to declare non-infringed.  As such, Defendant's motion for summary judgment on Plaintiff's claim for declaratory judgment of non-infringement will be denied as moot.

The one remaining issue involves Calgon's "motion for summary judgment to dismiss" Wedeco's claim of unfair competition.  In Count I of its Amended Complaint, Wedeco alleges that Calgon engaged in unfair competition by telling others that the '893 patent covers low-pressure UV technology, when the '893 patent covers only medium-pressure technology.  (Am. Compl. ¶ 50.)  Calgon now argues that, in the Opinion of March 9, 2004, this Court determined that low-pressure UV technology is not excluded from the scope of the '893 patent, and so Wedeco cannot prove an essential element of its claim – that the '893 patent does not cover low-pressure technology.  This makes sense.  Wedeco has not defeated the motion by bringing forth evidence that demonstrates any genuine issues as to material facts.  Wedeco argues that evidence exists that Calgon made statements in bad faith, but fails to counter Calgon's argument that this Court's Markman decision means that Calgon's statements were true.

Calgon has demonstrated that no genuine issue of material fact precludes summary judgment, and it is entitled to judgment as a matter of law.  Defendant's motion for summary judgment on Plaintiff's claim of unfair competition will be granted.

## <u>CONCLUSION</u>

For the reasons stated above, this Court finds that Wedeco has proven, by clear and convincing evidence, that every claim of the '803 and '893 patents is anticipated and invalid. Plaintiff's motion for summary judgment on patent invalidity is granted.  Defendant's motion for summary judgment on infringement is denied as moot.  Defendant's motion for summary

judgment on Plaintiff's claims is denied in part and granted in part: Defendant's motion for summary judgment on Plaintiff's claim for declaratory judgment of non-infringement is denied as moot, and Defendant's motion for summary judgment on Plaintiff's claim of unfair competition is granted.

    S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: June 30, 2006